829 A.2d 387 (2003)
WESTINGHOUSE ELECTRIC CORPORATION/CBS, Petitioner,
v.
WORKERS' COMPENSATION APPEAL BOARD (KORACH), Respondent.
Commonwealth Court of Pennsylvania.
Argued May 6, 2003.
Decided July 1, 2003.
Reargument Denied August 25, 2003.
*388 Joseph A. Fricker, Pittsburgh, for petitioner.
Anthony W. DeBernardo, Greensburg, for respondent.
BEFORE: SMITH-RIBNER, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.
OPINION BY Judge FRIEDMAN.
Westinghouse Electric Corporation/CBS (Employer) petitions for review of the August 15, 2002, order of the Workers' Compensation Appeal Board (WCAB) that affirmed in part and reversed in part the July 31, 2001, decision of the workers' compensation judge (WCJ) on remand. We affirm.
On December 4, 1984, Employer issued a notice of compensation payable (NCP), acknowledging that, on November 14, 1984, Claimant sustained a work-related injury in the nature of a "back sprain." (WCJ's 9/5/00 Findings of Fact, No. 1; R.R. at 238a.) Claimant had no prior psychological problems, but his personality changed following the injury, and he became severely depressed. In 1989, Claimant went to a psychiatrist, Gerald Lisowitz, M.D., who treated Claimant and prescribed medications that improved Claimant's psychiatric condition. Eventually, Dr. Lisowitz became ill and referred Claimant to another psychiatrist, Jonathan M. Himmelhoch, M.D., for continued treatment. (See WCJ's 9/5/00 Findings of Fact, Nos. 8-9, R.R. at 10a-12a.) Although Claimant's psychological disorder was not identified in the NCP, Employer paid all *389 bills submitted for Claimant's psychiatric treatment.
Pursuant to a supplemental agreement, the parties agreed that work was available to Claimant within his physical limitations effective November 16, 1989.[1] (WCJ's 9/5/00 Findings of Fact, No. 2; R.R. at 239a.) By order dated February 28, 1990, Claimant's benefits were commuted in the sum of $77,000.00. (WCJ's 9/5/00 Findings of Fact, No. 4; R.R. at 248a.) As part of the commutation agreement, the parties stipulated that Employer would remain responsible for payment of reasonable and necessary medical expenses related to Claimant's work injury. (WCJ's 9/5/00 Findings of Fact, No. 3; R.R. at 247a.) Although neither the supplemental agreement nor the stipulation specifically reference a psychiatric component of Claimant's 1984 work injury, Employer continued to pay all bills arising out of Claimant's psychiatric care through August of 1998. (Hearing of May 25, 2000, N.T. at 30, R.R. at 217a, 221a.)
On September 25, 1998, after Employer refused to continue with these payments, Claimant filed a claim petition alleging that he suffered a psychiatric injury in the nature of depression that was precipitated by his 1984 back injury; the petition sought payment of related medical bills as well as counsel fees. In the claim petition, Claimant alleged that Employer's insurance carrier had acknowledged the relationship between Claimant's psychiatric condition and his 1984 back injury and had paid related medical bills through August of 1998, after which the carrier unreasonably refused to pay additional bills. (WCJ's 9/5/00 Findings of Fact, No. 5; R.R. at 1a-2a.)
In its answer to the claim petition, Employer admitted only that Claimant suffered a work-related low back injury on November 14, 1984, for which compensation was commuted on February 28, 1990. Employer also asserted that Claimant's claim of psychic injury was barred by the statute of limitations set forth in section 315 of the Workers' Compensation Act (Act).[2] Further, Employer alleged that Claimant's claim petition should be treated as a petition to review notice of compensation payable, which likewise would be time barred under section 413(a) of the Act.[3] *390 (See WCJ's decision of 9/5/00, Findings of Fact, No. 6; R.R. at 4a-5a.)
During hearings before the WCJ, both parties presented evidence regarding the causal relationship between Claimant's psychiatric treatment and his 1984 work injury. The WCJ specifically credited the testimony of Claimant, Claimant's wife and Claimant's current treating psychiatrist, Dr. Himmelhoch, in support of that relationship, and the WCJ rejected the conflicting testimony of Employer's expert psychiatrist, Stuart S. Burstein, M.D. (See WCJ's 9/5/00 Findings of Fact, Nos. 14-16, 18; R.R. at 14a-16a.) With respect to Employer's statute of limitations argument, the WCJ found that "[d]uring the period of time that [C]laimant was receiving psychiatric care and medications and the insurance carrier was paying, [C]laimant was lulled into a false sense of security that this was the reasonable medical care related to his work injury that was contained in the statement in the commutation where [Employer] stipulated to pay for all reasonable and necessary medications relating to the work injury."[4] (WCJ's 9/5/00 Findings of Fact, No. 19, R.R. at 16a.) Based on these findings, the WCJ concluded that Claimant sustained his burden of proving that he suffered a subsequent depression precipitated by his low back injury of November 14, 1984, and that the psychiatric care and medications received from 1989 and ongoing were reasonable, necessary and causally related to the 1984 work injury. The WCJ further held that Employer's payment of bills for Claimant's psychiatric treatment constituted payments in lieu of compensation[5] that tolled the three-year statute of limitations in section 315 of the Act, 77 P.S. § 602, making Claimant's claim petition timely. (WCJ's 9/5/00 Conclusions of Law, Nos. 2-6; R.R. at 18a.)
Accordingly, on September 5, 2000, the WCJ issued an order granting Claimant's claim petition. The WCJ directed that the NCP be amended to include psychological injuries and ordered Employer to pay *391 medical bills associated with Claimant's psychiatric care from August 1998 and ongoing until such time as they were found to be unreasonable and unnecessary. The WCJ further directed Employer to pay Claimant's attorney's fees for unreasonable contest and to reimburse Claimant's counsel for costs. (R.R. at 19a-20a.)
Employer appealed to the WCAB, which, by decision dated March 23, 2001, affirmed the WCJ in part. Relying on AT & T v. Workmen's Compensation Appeal Board (Hernandez), 707 A.2d 649 (Pa. Cmwlth.1998), the WCAB first concluded that the WCJ properly treated Claimant's petition as a claim petition.[6] Further, the WCAB held that the WCJ appropriately analyzed the timeliness issue under section 315 of the Act and correctly determined that Employer's payment of Claimant's medical expenses for psychiatric treatment tolled the applicable statute of limitations until three years following the most recent voluntary payment of medical benefits in August of 1998. The WCAB affirmed the WCJ's decision to grant the claim petition, but vacated the WCJ's award of attorney's fees, remanding the matter to the WCJ for findings regarding the reasonableness of Employer's contest pursuant to section 440 of the Act, 77 P.S. § 996.
On remand, the WCJ found that Employer failed to present a reasonable contest to the claim and, by decision dated July 31, 2001, awarded Claimant attorney's fees in the amount of $150 per hour for a total of 37.6 hours based upon this unreasonable contest. (R.R. at 60a.) Employer appealed from that decision, incorporating by reference its appeal of the WCJ's earlier decision.
On August 15, 2002, the WCAB issued its second decision and order, again affirming the WCJ insofar as he granted Claimant's claim petition, but reversing the WCJ's award of attorney's fees, concluding that Employer presented a reasonable contest because there was an issue as to the timeliness of the filing. (R.R. at 96a-99a.) Employer now appeals to this court.[7]
Employer first renews its argument that Claimant's petition was time barred. Relying on Guthrie v. Workers' Compensation Appeal Board (Keystone Coal Co.), 767 A.2d 634 (Pa.Cmwlth.2001), and Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster), 556 Pa. 325, 728 A.2d 902 (1999), Employer contends that the WCJ erred in reviewing the case as a claim petition proceeding, with time limitations governed by section 315 of the Act. Employer maintains that, because Claimant was seeking to amend the existing NCP to include an additional injury related to the original back sprain, Claimant's claim petition should have been treated as a petition to review the NCP, which is subject to the time limitations set *392 forth in section 413(a) of the Act.[8] Employer sees the distinction as crucial to its timeliness argument because, although an employer's payment of a claimant's medical expenses may toll the three-year limitations period for a claim petition, it would not have the same effect on a review petition.[9]
Although the distinction between a claim petition and a review petition may be critical under certain circumstances, we conclude that the distinction is not relevant to the resolution of this matter.[10] First, we agree with the WCJ that Claimant was lulled into a false sense of security by Employer's payment of psychiatric bills, both before and after executing the commutation agreement. Because Claimant justifiably relied on Employer's conduct over a period of years to forbear from initiating a contest regarding these payments, Employer now is estopped from asserting Claimant's untimely filing as a defense to the petition, whether it is treated as a claim petition under section 315 of the Act or a review petition under section 413(a) of the Act. See Taglianetti v. Workmen's Compensation Appeal Board, 63 Pa. Cmwlth. 456, 439 A.2d 844 (1981), aff'd, 503 Pa. 270, 469 A.2d 548 (1983) (stating that, even where an employer unintentionally misleads a claimant and thereby induces reliance and passivity, the employer is estopped from raising the claimant's belated filing as a defense pursuant to section 315); Workmen's Compensation Appeal Board v. State Workmen's Insurance Fund, 22 Pa.Cmwlth. 498, 349 A.2d 920 (1976) (stating that an employer or its carrier may be estopped from raising a statute of limitations defense to a petition filed under section 413(a) of the Act if their actions, or the actions of either of them, have intentionally or unintentionally caused the claimant to believe that his claim would be attended to).
Moreover, we conclude that what Claimant actually seeks by the filing of his "claim" petition is enforcement of the parties' 1990 commutation agreement, which we believe can only be interpreted as reflecting Employer's prior acceptance of liability *393 for Claimant's psychiatric injury and Employer's promise to continue paying bills for that work-related psychiatric treatment into the future.
In interpreting contracts, Pennsylvania courts have often turned to the Restatement of Contracts for guidance. Section 202 of the RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981), entitled Rules in Aid of Interpretation, states in relevant part:
(1) Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.
...
(4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.
(5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.
Here, there is no dispute that, from the time Claimant began psychiatric treatment in 1989, Employer paid all bills submitted for related medical care and prescriptions and that, in 1990, the parties executed a commutation agreement stipulating that "Employer will remain responsible for payment of reasonable and necessary medical expenses related to [C]laimant's work-related injuries...." (Stipulation, ¶ 8, R.R. at 243a.) Employer's course of performance for the next eight years, during which Employer continued to pay for all Claimant's ongoing psychiatric care pursuant to the commutation agreement, confirms that Employer apprehended its responsibility under that stipulation as including liability for Claimant's psychiatric bills.
The parties to an agreement know best what they intended, and, while not necessarily conclusive, their action under the agreement often is the strongest evidence of that intent; conduct must be weighed in light of the terms of the agreement and their possible meanings. See RESTATEMENT (SECOND) OF CONTRACTS § 202(4) comment g (1981). In this case, based on the parties' respective understanding of the terms of the commutation agreement, Claimant submitted his psychiatric bills to Employer expecting Employer to pay those bills, and for eight years, Employer did just that. Long ago, in Gass's Appeal, 73 Pa. 39, 46 (1873), in a statement that is particularly relevant to the current situation, Mr. Justice Agnew said "when a contract is capable of two different interpretations, that which the parties themselves have always put upon it, and acted upon, especially as here for a long series of years, a court will follow, because it is the true intent and meaning of the parties...." By their conduct, Claimant and Employer placed their own interpretation on the meaning of the commutation agreement, and we will adopt it.
Consequently, we hold that the parties' commutation agreement requires Employer to pay for Claimant's ongoing work-related psychiatric treatment. Employer's unilateral refusal to continue making those payments after August of 1998 was contrary to the terms of the 1990 commutation agreement as reflected by Employer's eight years of performance pursuant to that agreement. Because Employer breached its promise under the *394 commutation agreement, the WCJ properly ordered the NCP amended to include Claimant's psychiatric injury and required Employer to continue to pay Claimant's medical expenses related to that injury until it has been determined that such psychiatric treatment is unreasonable and unnecessary.[11]
Accordingly, for the foregoing reasons, we affirm.[12]

ORDER
AND NOW, this 1st day of July, 2003, the order of the Workers' Compensation Appeal Board, dated and August 15, 2002, is hereby affirmed.
NOTES
[1] Although the WCJ's findings and the WCAB opinion give the date as November 16, 1998, this clearly is a typographical error.
[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 602. Section 315 of the Act provides that all claims for compensation be filed within three years from the date of the injury, stating, in relevant part:

In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as approved in article four hereof.... Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition: Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations.
77 P.S. § 602.
[3] The relevant paragraph of section 413(a) provides for the modification or reinstatement of an NCP and states, in pertinent part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, That, except in the case of eye injuries, no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition.... And provided further, That any payment made under an established plan or policy of insurance for the payment of benefits on account of nonoccupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations....
77 P.S. § 772.
[4] The WCJ found that Employer failed to offer any argument to counter Claimant's testimony regarding Employer's long-term acceptance of responsibility for Claimant's psychiatric treatment expenses and the sudden refusal by Employer's carrier to continue such payments when a new insurance adjuster took control of the file. (See WCJ's 9/5/00 Findings of Fact, No. 19, R.R. at 16a.)
[5] The WCJ found that Employer failed to offer evidence to show that these payments were not in lieu of compensation but were, instead, paid out of the graciousness of their heart for a non-work related condition. (See WCJ's 9/5/00 Findings of Fact, No. 20; R.R. at 16a-17a.)
[6] The WCAB quoted at length from a footnote in AT&T, in which this court cautioned claimants that they should file a claim petition, rather than a review petition, when seeking to amend an NCP to include an additional injury not admitted to by the employer at the time the employer issued the NCP. We note that this court recently reaffirmed this position in Jeanes Hospital v. Workers' Compensation Appeal Board (Hass), 819 A.2d 131, 134 (Pa. Cmwlth.2003) (stating that when a work-related injury results in subsequent injuries that are the direct result of the original work-related injury, a claimant should file a claim petition rather than a review petition).
[7] Our scope of review is limited to determining whether the adjudication is in accordance with the law, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe), 571 Pa. 189, 812 A.2d 478 (2002).
[8] Employer relies on Guthrie for the proposition that the timeliness of a claim for benefits based on an injury with a legal "history" is to be determined by section 413(a), not section 315, of the Act. Employer cites Commercial Credit for the proposition that the proper avenue for a claimant to pursue a psychiatric injury after issuance of an NCP for a physical injury is by way of a section 413 review petition.
[9] For purposes of a claim petition, an employer's payment of medical expenses for a work-related injury tolls the running of the statute of limitations set forth in section 315 of the Act, 77 P.S. § 602, until three years following the most recent voluntary payment of benefits. Schreffler v. Workers' Compensation Appeal Board (Kocher Coal Co.), 567 Pa. 527, 788 A.2d 963 (2002); Levine v. Workers' Compensation Appeal Board (Newell Corporation), 760 A.2d 1209 (Pa.Cmwlth.2000), remanded by 568 Pa. 594, 798 A.2d 1273 (2002); Golley v. Workers' Compensation Appeal Board (AAA Mid-Atlantic, Inc.), 747 A.2d 1253 (Pa. Cmwlth.2000), appeal denied, 569 Pa. 696, 803 A.2d 736 (2002). However, an employer's payment of medical expenses does not constitute compensation that could toll the three-year statute of limitations on a reinstatement or review petition, set forth in section 413(a) of the Act, 77 P.S. § 772. Bailey v. Workmen's Compensation Appeal Board (ABEX Corp.), 717 A.2d 17 (Pa.Cmwlth. 1998); O'Brien v. Workers' Compensation Appeal Board (Montefiore Hospital), 690 A.2d 1262 (Pa.Cmwlth.), appeal denied, 550 Pa. 694, 704 A.2d 1383 (1997).
[10] We acknowledge the existing confusion and seeming inconsistencies in the case law in this regard. However, resolution of the apparent conflict between Guthrie and our supreme court's decision in Commercial Credit, on the one hand, and Jeanes Hospital and AT & T, on the other hand, need not be decided here.
[11] Appropriately, the WCJ, in his remand decision, specifically stated that it was understood that the medical bills should be submitted on the proper forms and that Employer would be directed to pay those bills only "following their submission by the provider on the proper forms mandated by Act 44, pursuant to the cost-containment provisions of section 306(f.1) of the Act [,77 P.S. § 531(2)]." (WCJ's decision of 7/20/01, Findings of Fact, No. 3; R.R. at 57a-58a.)
[12] Because of our determination here, we need not consider Employer's remaining arguments.